People v Dawson (2025 NY Slip Op 00699)

People v Dawson

2025 NY Slip Op 00699

Decided on February 6, 2025

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:February 6, 2025

110831
[*1]The People of the State of New York, Respondent,
v
Raymond Dawson, Appellant.

Calendar Date:January 6, 2025

Before:Garry, P.J., Pritzker, Ceresia, Powers and Mackey, JJ.

Emmalynn S. Blake, East Greenbush, for appellant.
Mary Pat Donnelly, District Attorney, Troy (Lauren D. Konsul of counsel), for respondent.

Ceresia, J.
Appeal from a judgment of the County Court of Rensselaer County (Debra Young, J.), rendered March 19, 2014, convicting defendant upon his plea of guilty of the crime of robbery in the first degree.
In satisfaction of a 13-count indictment, defendant pleaded guilty to robbery in the first degree, admitting that he had forcibly stolen a gold necklace from the victim and, during the course of that crime, used a crowbar to strike the victim in the head. Under the terms of the plea agreement, which included a waiver of appeal and contemplated a prison sentence of 12 years, to be followed by five years of postrelease supervision, defendant was required to make restitution to the victim for the stolen necklace, and the People consented to holding a restitution hearing. After a hearing, County Court directed defendant to make restitution in the amount of $17,150. Defendant was thereafter sentenced, as an acknowledged second violent felony offender, to the agreed-upon prison term of 12 years, to be followed by five years of postrelease supervision, and ordered to pay restitution. Defendant appeals.
We affirm. Initially, defendant's challenge to the severity of the prison sentence is not precluded as the record reflects that he did not validly waive his right to appeal. A review of the oral plea colloquy establishes that, although a waiver of appeal was a condition of the plea agreement, when County Court explained the appeal waiver to defendant, the court stated that he had a right to appeal, but then stated that once he waived his right to appeal, he could not "at a later date change [his] mind and say [he wanted] to appeal." As such, the "[c]ourt did not adequately clarify that the waiver was not a total bar to [taking] an appeal and that some issues survive a waiver" (People v Miller, 221 AD3d 1177, 1178 [3d Dept 2023]; see People v Shanks, 37 NY3d 244, 253 [2021]; People v Bisono, 36 NY3d 1013, 1017-1018 [2020]; People v Thomas, 34 NY3d 545, 565-566 [2019]). The written waiver of appeal, executed at sentencing, apparently after the sentence was imposed, likewise failed to advise defendant that "some rights to appeal would survive the waiver" (People v Shanks, 37 NY3d at 253), i.e., "that appellate review remained available for certain issues" (People v Thomas, 34 NY3d at 564).[FN1] Thus, we find that defendant did not knowingly, voluntarily and intelligently waive his right to appeal (see People v Lopez, 6 NY3d 248, 256 [2006]; People v Miller, 221 AD3d at 1178). Nonetheless, the agreed-upon sentence was considerably less than the statutory maximum permissible prison sentence of 25 years, and close to the minimum permissible sentence, for this class B violent felony offense (see Penal Law § 70.04 [3] [a]). Upon due consideration of the relevant factors, including defendant's criminal history and use of violence during the robbery, we do not find that the sentence was "unduly harsh or severe" (CPL 470.15 [6] [b]) and decline defendant's invitation to reduce [*2]it in the interest of justice (see CPL 470.15 [3] [c]).
Defendant further argues that County Court erred in determining the amount of restitution, in that it was not supported by the hearing evidence, exceeded the statutory cap, was excessive and failed to take into account his ability to pay. As a condition of the plea bargain, the parties agreed that defendant would make restitution to the victim for the stolen necklace, which was never recovered. The parties also agreed that restitution would be capped at $18,982.25, the then-current estimated market value of the necklace according to a September 2013 estimate provided by the People, and at a minimum would be $5,616, the purchase price in 2003. "Restitution is the sum necessary to compensate the victim for out-of-pocket losses" and is designed to "mak[e] the victim whole" (People v Tzitzikalakis, 8 NY3d 217, 220 [2007] [internal quotation marks and citation omitted]; see Penal Law § 60.27 [1]). At the hearing, the victim's spouse testified that the necklace stolen by defendant was purchased as a gift for the victim in 2003 for $5,616, which was documented. The People submitted an affidavit from an experienced employee of the jeweler who sold the necklace, opining that, conservatively estimated, its current retail value was "at least $17,500" based on prevailing market gold prices. Contrary to defendant's claim, County Court did not abuse its discretion in basing the amount of restitution on the replacement value for the necklace, as the amount that would make the victim whole, rather than the value of the gram weight of the gold as scrap or the market value of a used necklace (see People v Periard, 15 AD3d 693, 694 [3d Dept 2005]; see also People v Grant, 189 AD3d 2112, 2114 [4th Dept 2020], lv denied 37 NY3d 956 [2021]). The court was not required to credit defendant's proof and arguments that substantial discounts off the retail price of jewelry are customary in the industry and should reduce the restitution amount. Instead, the court reasonably concluded that the 2% discount afforded on the original sale price would again be provided, resulting in a reduction in the estimated replacement cost ($17,500 x 2% = $350 discount) and, thus, the amount of restitution, to $17,150. Accordingly, the court's finding with respect to the amount of restitution is supported by the requisite preponderance of the evidence (see CPL 400.30 [4]) and is within the range contemplated by the plea agreement.
With regard to defendant's arguments that the restitution amount exceeds the statutory cap, as a general matter, subject to limited exceptions not applicable here, "the amount of restitution or reparation required by the court shall not exceed [$15,000] in the case of a conviction for a felony" (Penal Law § 60.27 [5] [a]; see People v Horne, 97 NY2d 404, 414 [2002]). However, a court may order restitution in excess of the cap as long as the sum is "limited to the return of the victim's property, including money[*3], or the equivalent value thereof" (Penal Law § 60.27 [5] [b] [emphasis added]; see People v Horne, 97 NY2d at 414). The amount of restitution ordered herein, while exceeding the cap, was properly limited to the value of the stolen necklace (see People v Horne, 97 NY2d at 414).
We are not persuaded by defendant's claim that the amount of restitution is harsh and excessive and decline his request to reduce it (see People v Osborne, 161 AD3d 1485, 1486 [3d Dept 2018]). Contrary to defendant's contention, "it was not necessary to consider defendant's ability to pay at the time of sentencing, as the sentence imposed include[d] a significant period of incarceration" and, "not[ably,] defendant may apply at any time for resentencing upon the ground that he is unable to pay" (People v Fancher, 116 AD3d 1084, 1089 [3d Dept 2014]; see CPL 420.10 [5]; Penal Law § 60.27 [1]).
Finally, with respect to defendant's ineffective assistance of counsel claim, we find that defendant received meaningful representation at the restitution hearing where, among other things, counsel challenged the People's proof, submitted competing proof regarding the valuation of the necklace and made cogent and vigorous legal arguments regarding the proper amount of restitution (see People v Honghirun, 29 NY3d 284, 289 [2017]). Overall, nothing in the record before us supports this claim (see People v Drake, 224 AD3d 1138, 1142 [3d Dept 2024]).
Garry, P.J., Pritzker, Powers and Mackey, JJ., concur.
ORDERED that the judgment is affirmed.

Footnotes

Footnote 1: The record reflects that, subsequent to the imposition of sentence and execution of the appeal waiver, defense counsel advised defendant on the record that certain issues survived the waiver of appeal. This belated advisement did not retroactively cure the deficiencies in the oral and written waiver of appeal or establish that "defendant understood the terms and conditions of the waivers, specifically, the nature and consequences of the rights he was relinquishing at the time he was asked to waive his right to appeal" (People v Spencer, 219 AD3d 981, 982-983 [3d Dept 2023], lv denied 40 NY3d 1041 [2023]; see People v Gil, 109 AD3d 484, 484-485 [2d Dept 2013], lv denied 22 NY3d 1099 [2014]).